Southwestern Bell Telephone Company v. Casson.

4-5813 138 S. W. 2d 406

Opinion delivered March 4, 1940.

*Huie & Huie* and *Downie & Downie,* for appellant.

*J. Paul Ward* and *J: H. Lookadoo,* for appellee.

HOLT, J. Appellee, Harry G. Casson, brought suit in the Clark circuit court against the Southwestern Bell Telephone Company and Phil L. Deal to recover alleged damages in the amount of $65,000 for injuries claimed to have been received by him from a fall on the floor in the supply room of appellant telephone company in the city of Batesville, Arkansas, on August 28, 1937. On a jury trial he was awarded damages in the sum of $30,000.

The allegations of negligence upon which appellee sought recovery are that it became necessary for him to remove a heavy cardboard box of supplies, on the floor, from in front of his locker, to enable him to open the locker door, and that when he ''stooped over and took hold of the said box and attempted to lift or slide it to another position on the floor of said supply room, the box suddenly slid forward and at the same time the plaintiff's feet slipped from under him and to the side, causing plaintiff suddenly to fall and thereby injure himself as hereinafter more particularly described.

''Plaintiff states that the said box was caused to slip suddenly as stated above because it rested upon some fine shavings or excelsior which were hidden from his view by the said box and his feet were caused to slip as stated because of some fine particles of shavings or excelsior dust on the floor which were not visible to the plaintiff until after his attention was called to the same by the accident or mishap; that the said fine shavings or excelsior and said dust were carelessly and negligently placed or left on the floor, as stated above, by the defendant, Phil L. Deal, who, at the time, was an employee of the defendant company; and that the said Phil L. Deal had so carelessly and negligently placed or left said shavings or excelsior and fine dust on the floor while handling and removing boxes of supplies of defendant

company which were in, and intended to be placed in, the locker of the company which was used exclusively by the defendant, Phil L. Deal."

Appellants entered a general denial and affirmatively pleaded contributory negligence and assumed risk on the part of appellee.

The evidence, as reflected by the record, stated in its most favorable light to appellee, is to the following effect:

On Saturday, August 28, 1937, appellee Casson, an employee of appellant telephone company, and who had been in its employ for ten years prior thereto, went to the supply room at about four-thirty in the afternoon to secure certain supplies from his locker. This room was kept locked and only Deal, appellee, and the janitress had access to it. The room was well lighted from two west windows, through which the sun shone, and by another window on another side of the room. Immediately in front of his locker, which was about three feet from the floor and resting on the locker belonging to Phil L. Deal, was a cardboard carton of supplies about 33 inches long, 30 inches wide, and 12 inches high, and weighing between 60 and 100 pounds. The room was about 14 feet square. It was admitted that it had been swept clean and dusted by the janitress of the building between six and eight o'clock of that morning.

Appellee testified relative to his attempt to pick up the box, or remove it, as follows: "When I got there, of course, unconsciously I noticed a box about the size of that one (indicating) laying down and I reached down to pick it up, and get it out of the way . . . Q. How much does that box weigh? A. I judge around 50 or 60 pounds, maybe. Q. Anyway 50 or 60 pounds, or maybe 100 pounds? A. I never did pick the box up, I just lifted it up. . . . Q. When you reached down to get it (the box) what did you do? A. I hit the floor about as hard as I could. Q. What caused you to hit the floor, A. The box slipped and I slipped at the same time. Q. When you picked it up the box scooted across the floor? A. My feet went one way and my arm caught on Mr. Deal's cabinet and the bottom of my back hit the floor. . . . Q. After you fell did you look to see what

caused you to fall? . . . A. Fine rosin dust and excelsior where it had slipped out of the box. Q. Did you find it where you slipped on the floor? A. Yes, the floor showed the marks. Q. What color was the floor? A. Light gray. Q. What was it you saw on the floor? A. Fine greasy dust, kind of white yellowish, like rosin dust. Q. Had you noticed anything like that on the floor before you slipped? A. No, I did not have my mind on slipping. Q. You say there was excelsior on the floor? A. It was fine dust excelsior where I slipped, but heavy excelsior shavings under the box.''

He further testified ''after I slipped I saw on the floor fine greasy dust, kind of white-yellow, like rosin dust,'' and that a small amount of excelsior was seen on the floor from where the box had slipped, and further: ''Q. Could you tell the jury how much excelsior and trash and stuff was on the floor under the box? A. I couldn't say how much was under the box. The box was left there as far as I know. There was a small amount laying out to the end of the box where the box had been moved —and what was under the box, I don't know.''

Witness, Buck Hall, a drayman, testified that he brought a box of supplies similar to the one in question to the supply room at about twelve o'clock of the day of August 28th and saw Phil L. Deal, manager for appellant telephone company, in the supply room working. Mr. Deal let him in and showed him where to place the box, and that he set the box down. He paid no particular attention as to just where he placed it. ''Q. Did you notice to see or did you make any examination or inspection as to whether or not there was anything on the floor? A. Not particularly. I noticed some boxes sitting on the floor, but I didn't pay much attention to it—it was something scattered around. Q. Did it look like boxes he had taken supplies out of? A. Yes, sir.''

Witness, Claud Julian, testified on behalf of appellee that he went to the telephone company building at about four p. m. on the day in question to see appellee Casson. As he went up the stairs to the supply room, he heard appellee fall and say, ''Oh.'' He entered the supply room through a window and when he got to appellee

he found him lying with his arm on a cabinet where he fell, and further: "Q. Did you see anything on the floor around there? A. I seen some fine shaving dust, excelsior dust. Q. Did you see a box there? A. Yes, sir. . . . Q. About how much excelsior would you say was on the floor there? A. I couldn't say; there was a lot of fine dust and I noticed some sticking out of the edge of the box. . . . Q. Tell the jury whether or not it (excelsior dust) is slick if you step on it. A. Yes, sir, it is slick—pine rosin is slick."

He further testified that he saw appellant, Phil L. Deal, in the office of the telephone company at about eight o'clock a. m. of the day in question; that the day was clear and the sun was shining, and that there were three windows in the room in question.

On this state of the record, appellants contend (1) that the evidence is not sufficient to take the case to the jury; and (2) that appellee assumed any risk attending the act causing his alleged injuries.

Upon consideration of all the evidence, we think both of these contentions must be sustained.

Briefly summarizing, appellee contends that after the janitress had cleaned up the supply room on the morning before the injury to him, the defendant, Phil Deal, in unpacking some supplies allowed excelsior dust to get on the floor; that the cardboard box in question had been placed on the floor against the lower locker on top of some excelsior that had come out of one of the supply boxes when Mr. Deal unpacked the supplies; that Mr. Deal was guilty of actionable negligence, and through his negligence the Southwestern Bell Telephone Company was also liable, in leaving on the floor this fine excelsior dust or rosin dust.

As a general proposition it could make no difference whether appellee was injured by the negligence of appellant, Deal, or any other employee of the appellant telephone company so far as the liability of appellant telephone company is concerned, since any negligent acts of employees are chargeable to that of the master.

In the instant case, however, as said above, it is our view that no negligence has been shown as against ap-

pellant, Deal, and none as against appellant, Southwestern Bell Telephone Company.

The master is not the insurer of his servants' safety. The only obligation resting upon the master is to exercise ordinary care to furnish his servant a reasonably safe place in which to perform his duties and labors.

The rule was stated in *Mosley* v. *Raines*, 183 Ark. 569, 37 S. W. 2d 78, by this court as follows: "The master is not only bound to exercise reasonable care to furnish a safe place to work, but the servant has a right to assume that the master has performed his duty. It is, however, also thoroughly established by the decisions of this court that the master is presumed to have performed his duty, and the servant cannot recover for an injury unless he shows that the master was guilty of negligence and that the negligence of the master caused his injury. The master is liable for the consequences of his negligence, but he is not an insurer of the employee's safety."

Appellee contends that there was probably two handfuls of excelsior concealed under the box and that he slipped in some fine excelsior dust or rosin dust at the end of the box, and in his brief says: ". . . this excelsior was a whitish-yellow color and that the paint on the floor of the supply room was a grayish color, and that it would be necessary to make a very close inspection in order to discover this excelsior and fine dust that was on the floor; that this excelsior and fine dust contained rosin, which would necessarily be slick."

We think it clear that it would be placing too high a degree of care upon appellants to require them to keep the floor of this well-lighted supply room absolutely clear of every particle of fine dust such as appellee claims caused him to slip and fall in the instant case.

In *Missouri Pacific Railroad Company* v. *Martin*, 186 Ark. 1101, 57 S. W. 2d 1047, this court said: "It would be placing too high a duty upon the master to require him to keep the employee's place of work clear of every object upon which an employee might step and slip or fall. They are not insurers, but are only held to the exercise of ordinary care to furnish a safe place

to work." This language was approved in *Caddo River Lumber Company* v. *Henderson,* 194 Ark. 724, 109 S. W. 2d 425.

In the recent case of *Temple Cotton Oil Company* v. *Brown,* 198 Ark. 1076, 132 S. W. 2d 791, this court held no actionable negligence was shown where plaintiff, while helping to carry a drive shaft around an engine, sliped on some oil which he alleged had been negligently left on the engine room floor since the previous day. In holding that a verdict should have been directed for defendant, this court said: "Let it be assumed that there was some oil on the floor of the engine room of the cotton gin, and that the foreman had given general instructions to keep the floor clear of oil. It is not unusual, indeed it may be said to be the usual thing to find more or less oil or grease on the floor of the engine rooms of all cotton gins. The engine operated by appellant was a well-known make of open crank case engines, and such engines do throw out some oil. But this fact must have been well known to appellee, as he was frequently in and about the engine room, and had worked at this gin one or two seasons before the 1937 season, and assisted in removing the drive shaft the day before. So, it is difficult to see that appellant was negligent, because its employee in the engine room had not mopped up the oil which appellee says he stepped in, even in violation of instructions so to do."

See, also, *Kroger Grocery & Baking Company* v. *Kennedy, ante* p. 914, 136 S. W. 2d 470.

We are also of the view that appellee assumed whatever risk attended the uncomplicated, simple act of attempting to lift or move the box in question in this well-lighted room.

In the case of *Missouri Pacific Railroad Company* v. *Lane,* 186 Ark. 807, 56 S. W. 2d 175, where the facts were more favorable to appellee than those in the instant case, this court said:

". . . [appellee] says he did not notice the oil until he slipped, and that he supposed that if he had looked down where he put his foot he might have seen it. . . . He was unloading this car in the broad open

daylight, and the only excuse he gives for not seeing this oil and thereby avoiding it is that he did not look. Had he looked, he would have seen the oil, as it was plainly visible on the top of the car. The law, under such circumstances, is well settled. In the recent case of *Mississippi Valley Power Company* v. *Hubbard,* 181 Ark. 487, 26 S. W. 2d 118, we said: 'It is true employees do not ordinarily assume risks created by the negligent act of the master, and that he has a right to require of the master to provide suitable appliances and a safe place in which to do his work, and to do such is the clear duty of the master. *St. L. I. M. & S. Ry. Co.* v. *Touhey,* 67 Ark. 209, 54 S. W. 577, 77 Am. St. Rep. 109; *Pettus & Buford* v. *Kerr,* 87 Ark. 396, 112 S. W. 886; *St. L. I. M. & S. Ry. Co.* v. *Holmes,* 88 Ark. 181, 114 S. W. 221. But it is equally true that where the danger arising from the negligent conduct of the master is so apparent and obvious in its nature as to be at once discoverable to one of ordinary intelligence, an employee, by voluntarily undertaking to perform his work in such a situation, assumes the hazards which exempts the employer from liability on account of injury to the employee. *Wisconsin & Ark. Lbr. Co.* v. *McCloud,* 168 Ark. 352, 270 S. W. 599; *Chicago, R. I. & P. R. Co.* v. *Allison,* 171 Ark. 983, 287 S. W. 197; *Ward Furniture Co.* v. *Weigand,* 173 Ark. 762, 293 S. W. 1002.' Other recent cases on the subject are *Howell* v. *Harvill,* 185 Ark. 977, 50 S. W. 2d 597, and *Koss Construction Co.* v. *Vanderburg,* 185 Ark. 316, 47 S. W. 2d 41.

"No one knew how the oil happened to be on top of the tank, whether it had sloshed out of the tank car through the dome or whether it had been spilt there by the oil company, from whom it was purchased, in loading it; but this can make no difference."

For the errors indicated, the judgment of the court below will be reversed, and since the cause seems to have been fully developed, it will be dismissed.