Twin City Pipe Line Company *v.* Butler.

4-6510 156 S. W. 2d 222

Opinion delivered December 1, 1941.

*Miles & Young* and *Thomas Harper,* for appellant.

*Partain & Agee,* for appellee.

Holt, J. Appellee sued appellant to compensate personal injuries alleged to have been caused by the negligence of appellant, and alleged in his complaint that appellant had negligently laid a gas pipe line across a forty-acre tract of farm land which appellee was cultivating as tenant or lessee; that appellant had negligently buried, or laid, the pipe in question too near the surface of the ground and not below ordinary plow depth, and that while plowing said land, and in the exercise of ordinary care, his plow struck the pipe, throwing him against and over it and causing the injuries complained of.

Appellant defended on the ground that it had been guilty of no negligence and pleaded the affirmative defense of contributory negligence on the part of appellee as a bar to any recovery.

Upon a jury trial there was a verdict for appellee in the amount of $7,500. This appeal followed.

Appellant's principal ground for reversal is that appellee's contributory negligence bars recovery in this case, and after a careful review of the testimony we

have reached the conclusion that this contention of appellant must be sustained.

The evidence, when viewed in the light most favorable to appellee, is to the following effect: Appellee was a tenant and renter on the land in question. The pipe line entered the forty-acre tract near its northwest corner. It was uncovered and exposed for some three or four feet at this point of entry, and was laid in a southeasterly direction across the forty acres. At some points it was within four or five inches of the surface and was not laid below plow depth. On several occasions prior to the date of the injuries complained of, appellee and his sons, while plowing, had struck this pipe line with their plows. They knew it was there and that they might strike it in plowing.

At the time of the alleged injury, September 14, 1940, appellee had gone onto the forty-acre tract with a team of mules and a plow for the specific purpose of "backfurrowing" over this pipe line to mark its location. Webster defines backfurrowing, "To plow by throwing, or turning, the soil from the first two furrows together, leaving clear furrows on the sides."

Appellee testified (quoting from his testimony): "Q. Mr. Butler, just what were you doing at the time you struck something under the ground? A. Plowing. Q. Were you down there for any special purpose? A. Yes, sir. Q. What was that? A. To plow this out to hold the boys back off of the pipe line with the tractor.

. . .

"I had broken several plows on the gas pipe and I didn't want to break any more, so I had Drennan Byars to ask the gas people to do something about it and they said they would, but didn't do it, so I went down there with a team to backfurrow it on the line, so the boys could see where it was and not break any more plows, so I ran into the pipe unexpectedly and the pin and doubletree must have broken because I went over the plow and must have hit on my head for my head was full of dirt when I got to the house."

He further testified: "Q. You thought, in a general way, that you were close to the pipe line, didn't you? A. I didn't know. I figured it was smooth, that the plow would run down the pipe. . . . Q. You said you thought you were plowing along side of it and that if you hit it, it would be smooth and the plow would go down the side of the pipe? A. If it happened to get on it that it would be a smooth pipe, and the plow would scoot off and go on."

As to where the pipe line entered the forty acres, appellee testified: "Q. Where does the pipe come in, assuming this is the forty acres here? A. It comes over close to that (indicating). Q. The northwest corner of that forty acres? A. Not exactly in the corner. Q. All in the northwest part of that corner? A. All I know is that the pipe just comes in up there. . . . Back up in the northwest corner my oldest boy did the biggest part of the plowing with the tractor and he told me he hit it on the other side, he hit it once with the middle buster and once with a cultivator. Q. In the northeast corner? A. The southeast corner. Q. You hit it in 1937 in the northwest corner? A. No, sir, not in the corner. Q. I mean in the northwest part of that forty? A. It is the west central part of the forty."

Cly Butler, appellee's son, testified: "Q. Do you know what your father was doing down there at the time he was injured ? A. He was backfurrowing over the pipe, putting it under the ground deeper where the tractor plow wouldn't hang on it and tear it up."

Appellee's witness, Charles Wilson, testified: "Q. Tell the jury what you noticed and what he was doing there and if the plow struck anything? A. It looked to me like he was backfurrowing, trying to cover the pipe up and hit the coupling on the pipe."

Conceding that appellant was negligent in the manner in which it laid its pipe across the land in question, the law is well settled that appellee would not be entitled to recover if the evidence shows that he was guilty of any negligence contributing to his injury. In the instant case the testimony of appellee, and other wit-

nesses introduced by him, we think, clearly shows negligence on the part of appellee. At the time of his alleged injuries he had gone into the field in question for the specific purpose of "backfurrowing" on top of the pipe line and by thus raising the earth and making a ridge, mark the location of the pipe in order to warn of its presence and location. He and his sons had struck this pipe line on previous occasions many times. He knew where it entered the field, it being exposed for three or four feet at that point, where it went out of the field and its general direction. He voluntarily, according to the testimony, set his plow along the side of this pipe and as he plowed (in his own words) he "figured it was smooth, that the plow would run down the pipe (if he hit it)" and while plowing along the side of the pipe his plow struck a "collar" or some part of the pipe, causing his injuries. He needed no additional warning from appellant as to the location of the pipe. He knew its general location, and was attempting to cover it. The fact that he hit it is self-evident that his supposition as to its location was correct.

We have many times held in railway crossing cases, where the statute requires signals to be given of the coming of trains, that where one has that knowledge otherwise "signals cease to be factors." *Missouri Pacific Railway Co.* v. *Price,* 182 Ark. 801, 33 S. W. 2d 366.

The general rule, applicable here, is stated in *St. Louis & S. F. Ry. Co.* v. *Carr,* 94 Ark. 246, 126 S. W. 850, where this court said: "But, although the railroad company may have been guilty in this case of negligence which caused the injury, still this did not absolve the plaintiff from the duty to exercise due and ordinary care to avoid the injury. For, if he was guilty of any negligence which contributed to the injury sustained by him, he cannot recover. This contributory negligence of the plaintiff would consist in some act or omission on his part amounting to a want of ordinary care. . . .

"Where a danger is probable or obvious, it is the duty of the person to exercise ordinary care to avoid the injury, even though the other party was negligent. And this duty to avoid consequences of another's negligence

arises whenever the circumstances are such that an ordinarily prudent person would apprehend their existence. The law requires the exercise of ordinary care to observe the danger and avoid it.''

As has been indicated, we think any injuries sustained by appellee were due to his own negligent act and that he contributed to his own hurt. The trial court should have directed a verdict in favor of appellant as requested by it. For the error indicated, the judgment will be reversed and inasmuch as the cause of action seems to have been fully developed, it will be dismissed here. It is so ordered.