REYNOLDS METAL COMPANY *v.* BALL.

4-9108                                   232 S. W. 2d 441

Opinion delivered June 12, 1950.

Rehearing denied October 2, 1950.

*Wright, Harrison, Lindsey & Upton, Leon B. Catlett* and *Walter L. Rice,* for appellant.

*Ed F. McDonald,* for appellee.

LEFLAR, J. This is an action for damages to plaintiff's farm and pasture land, located on Hurricane Creek some six or seven miles below the alumina extraction plant [1] of defendant Reynolds Metal Co. (hereinafter called Reynolds). The damage to the land was caused by sediment deposited on it during overflows of Hurricane Creek following heavy rains. Plaintiff alleged that this sediment either came from the Reynolds plant or contained poisonous substances which came from the plant. At the close of the plaintiff's evidence and again at the close of all the evidence the defendant moved for a directed verdict, the Court each time denying the motion. The jury's verdict was for the plaintiff for $1500, and defendant appeals, asserting insufficiency of the evidence to sustain the verdict.

No doubtful question of law is involved. It is virtually conceded that if Reynolds has discharged deleterious or poisonous substances from its plant and these have, during periods of normal overflow, lodged as sediment upon plaintiff's land, destroying vegetation and depreciating the value of the land, plaintiff may recover. *Nebo Consolidated Coal & Coking Co.* v. *Lynch,* 141 Ky. 711, 133 S. W. 763; *Good* v. *West Mining Co.,* 154 Mo. App. 591, 136 S. W. 241; *Arminius Chemical Co.* v. *Landrum,* 113 Va. 7, 73 S. E. 459, 38 L. R. A. (N. S.) 272, Ann. Cas. 1913D, 1075; Annot., 39 A. L. R. 899. The question is whether the evidence introduced was sufficient to justify the jury in finding that this has happened.

The evidence was ample to show that sediment was deposited on plaintiff's land when Hurricane Creek overflowed, as it frequently did. Plaintiff and several

---

[1] A plant in which alumina is extracted by means of chemical processes from the raw bauxite ore that is mined in the area.

of his neighbors testified, ". . . there comes an overflow and this old muddy substance covers my lespedeza up." "I had my cattle in there; they couldn't eat it until a rain came and washed that stuff off." "It is slick slimy stuff." "The sediment that comes out of the creek settles all over the land." "I walked out and picked up some of that, it was cracked open, it was in little cakes about half an inch thick and then I walked over to another place and stepped off in that and stepped over my shoetops almost." "The creek overflows and sediment and stuff overflows and gets on it and kills the vegetation."

It was not seriously suggested by plaintiff that all the sediment, or even any large portion of it, came directly from the Reynolds plant. The plant is several miles upstream from plaintiff's farm, and several bauxite mines (not alumina factories like the Reynolds plant), drain into Hurricane Creek between his farm and the plant, and others drain into the creek above the plant. It is clear that a large part of the sediment comes from sources for which defendant is not responsible.

Defendant Reynolds denied that any substantial amount of the sediment came from its plant, and also denied that any poisonous or harmful substances whatever were allowed to flow from its plant into the creek at any time. Reynolds introduced the testimony of expert witnesses, chemists who stated that they had analyzed the chemical content of the sediment and found nothing in it that would be poisonous or otherwise harmful to vegetation, apart from the obvious effect of choking the vegetation out by covering it up. Plaintiff introduced no expert evidence as to the chemical content of the sediment. The plaintiff and some of his witnesses gave their opinions that the sediment was poisonous, but these were unscientific statements of lay opinion, based on observations from which it might also have been concluded that the vegetation was merely choked out. Substantial proof that the sediment included chemical constituents that were poisonous to vegetation was lacking.

Similarly, the testimony was very vague as to the Reynolds plant being the source of the allegedly poisonous elements in the sediment. Plaintiff testified, "It (the muddy substance) came from Reynolds Metal Company because we never did have any of that there until that plant went in." Other witnesses testified: "Q. Where does that come from? A. Well, I would say it comes from the plant." "Q. You have seen this red water escaping from the plant? A. Yes, from the dump over there where it comes out from the plant into Hurricane creek over there on the north side of the Hurricane Creek plant . . . Q. You don't know what chemicals it is? A. No, sir, I wouldn't know." "Q. Do you know where this sediment comes from? A. Yes, it comes from the bauxite mines . . . .Q. Do you mean at the mining plant . . . ? A. I mean all of them. Q. Including Reynolds Metal Company? A. If they drain that ore in there. Q. Do you know whether they do or not? A. No, I don't, I don't know where it comes from. Q. You do know it comes out of the mines? A. Yes." Other witnesses testified to the same general effect. Their testimony was no more definite than that just quoted.

We are forced to conclude that the record does not contain substantial evidence that Reynolds discharged from its plant into the creek deleterious or poisonous substances which caused the damage of which plaintiff complains. The judgment based upon the jury's verdict in the Circuit Court must therefore be reversed.

The evidence might well have been much more completely developed than it was. This Court has held that, even where a judgment based on a jury verdict is reversed for insufficiency of the evidence to support it, there may be circumstances which justify remanding the case for new trial, rather than outright dismissal. *Douglas* v. *Franks*, 212 Ark. 426, 206 S. W. 2d 11. A majority of the Court feel that this is such a case.

The judgment is reversed and the cause remanded for a new trial.

MILLWEE and GEORGE ROSE SMITH, JJ., dissent, their view being that the judgment should be affirmed.