KUCHIN
v.
CHICAGO & N. W. R. CO.
No. 10942.

United States Court of Appeals
Seventh Circuit.
Jan. 12, 1954.

Rehearing Denied March 25, 1954.

864

Drennan J. Slater, Lowell Hastings, Chicago, Ill., for appellant.

James A. Dooley, William C. Wines, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This appeal is from a judgment entered on a verdict in favor of the plaintiff, Frank Kuchin, in an action for personal injuries against the Chicago and North Western Railway Company. In portions of the complaint here pertinent it is charged that the defendant negligently struck the plaintiff with an iron bar which was protruding from a car in its train and that the defendant negligently operated in its train a car with a defective draft key.

The mishap occurred in Waukegan, Illinois, during the daylight hours on May 30, 1951. At the place involved the defendant's track runs in a northerly and southerly direction on property owned by the City of Waukegan known as Union Street. Though once dedicated to public use, and never vacated, the City Council in 1891 did grant to the Chicago and North Western and another railway company "the right to lay down, maintain and operate in perpetuity two railroad tracks with necessary turnouts, side tracks and switches along and upon the westerly twenty four feet" of Union Street. This area is consequently not in fact used for public vehicular traffic. However, a cinder footpath, used for many years by the general public, is located roughly parallel to the defendant's track and about two feet from the east rail.

The plaintiff, a man 66 years of age and in good health at the time, was walking south along the path just prior to the accident. The defendant's train, which consisted of ten box cars pushed by a diesel engine, approached the plaintiff from the rear as it proceeded in the same direction. The train had been made up in the defendant's Waukegan yard, which is north of the scene of the accident, and the cars were being shoved to a wire mill located about a mile and a quarter to the south.

In response to a whistle the plaintiff looked around and first saw the train when it was about a block away. It was approaching at about ten miles an hour. The plaintiff then moved a foot or a foot and a half off the path to the east and onto the grass. He continued walking along the grass in this manner, and in a short time the lead end of the train overtook him. As the train was passing him his right arm was about two feet away from the sides of the moving cars. Suddenly, according to the plaintiff, after six or seven cars had passed, something hit him in the back at a point just below the right shoulder blade. This caused him to fall and his right leg was thrown across the rail and run over by the wheels of a freight car.

The plaintiff, although he had looked back at the train as it approached him, did not then see any protruding object. However, just as he fell, or immediately afterwards, he looked up and saw "a

piece of iron sticking out from somewhere." He did not particularly identify this object, but it appeared to be "a piece of bar or pipe, piece of rod or pipe, or something like that." The plaintiff said that it stuck out from the side of the train about two feet, that it was an inch thick, dark in color, and extended from a point four and a half or five feet above the ground. He did not notice whether it had a handle.

The plaintiff did not mention that he had been struck in the back until several days later and no person other than the plaintiff saw any object such as he described, either before the accident or afterwards. Nothing of the sort was noticed by members of the crew when the train was being made up in the yards, nor by various persons, including the police, the yardmaster, and crew members, who gathered about the scene of the accident right after it happened. Nor was anything of the sort revealed by an inspection of the cars the next day. This inspection did show that a draft key was missing from one of the cars, but other than that no irregularity in any of the equipment was ever detected. However, at the trial there was introduced on the plaintiff's behalf evidence tending to show that a bleeder rod, which in appearance would correspond roughly to the object which the plaintiff described, may sometimes become disconnected and extend laterally from the side of a car.

The court reserved ruling on the defendant's motion for a directed verdict made at the close of the plaintiff's evidence, and at the close of all the evidence this motion was denied with respect to the counts of the complaint which concern us here. The jury, in entering a general verdict for the plaintiff, also answered in the affirmative a special interrogatory as to whether the defendant did "negligently strike plaintiff with an iron bar." The defendant's motion for judgment notwithstanding the verdict was denied, and judgment was entered on the verdict.

We, of course, may not disturb this judgment if there is any evidence which, considered in the light most favorable to the plaintiff and with all reasonable inferences to be drawn therefrom, would justify submission of the case to the jury. Nattens v. Grolier Society, 7 Cir., 195 F.2d 449, 450.

We may quickly dispose of the proposition that negligence proximately causing the plaintiff's injury was somehow shown by the fact that a draft key was missing from one of the defendant's cars. The evidence discloses that a draft key is a part of the equipment comprising the coupler and its related machinery. It is simply a piece of steel 18 to 20 inches long, five inches wide, three-quarters of an inch thick, and with a weight of about 50 pounds. The coupler itself is beneath the center of the car at the end. The draft key is positioned beneath the center and about two feet away from the end of the car, where it fits into a slot extending transversely through the coupling machinery. It could not possibly extend laterally beyond the side of the car. The evidence is also undisputed that a draft key is not essential to the proper functioning of the coupler, and that its absence would not cause any other piece of the coupling machinery or equipment to project beyond the side of the car.

The evidence on this subject not only fails to raise a permissible inference of culpable negligence on the part of the defendant. It shows conclusively that a draft key, or the absence of one, could not, in any rationally conceivable manner, have been responsible for the plaintiff's injury. This being so, the trial court erred in submitting this issue to the jury.

The plaintiff seems to rely principally on the theory that the object which struck him was a bleeder rod projecting from the side of one of the cars. This device is an iron rod about three-eighths of an inch in diameter. It is part of the air brake equipment, and it is connected by a cotter pin to a bleeder valve

on the reservoir tank located beneath the car. It extends transversely from the tank to a point beneath the outside edge of the car, where it is supported by an eye bolt. The outer end of the bleeder rod is curved down to form a handle. When in normal position the handle of the rod does not extend beyond the outside edge of the car.

The plaintiff's expert witness, O'Hara, testified that in his experience as a railroad switchman it was a common thing to see bleeder rods that had become disconnected from the valve of the reservoir tank. He stated that this would permit the rod to slide through the eye bolt and project laterally beyond the outside of the car by as much as its own length. He explained that this may occur when the cotter pin which fastens the rod to the bleeder valve is broken or wears out because of vibration, rust, or natural deterioration. The witness further testified that this cotter pin normally will last for a year. He stated that a specific inspection of the cotter pin is necessary to determine whether it is in danger of coming loose. He said that such inspections are made at least once a year by the car department and that between such inspections there might be a defect in the cotter pin which a train crew could not determine.

It is the plaintiff's contention that the jury here could infer that a bleeder rod on one of the cars had come loose, that it then protruded beyond the side of the car, and that it struck the plaintiff. We assume this to be the fact. Having done so, however, we are yet impelled to hold that there is nothing in the record from which the jury could properly find negligence on the part of the railroad.

In Chicago & E. I. R. Co. v. Reilly, 212 Ill. 506, 72 N.E. 454, the plaintiff, while standing at an intersection waiting for the defendant's train to pass, sustained injuries when he was struck by a piece of timber which protruded from a loaded flat car. It was charged that the projection was caused either by negligent loading or by negligent operation of the train, and, while there was no evidence to either effect except the fact that the scantling was protruding, judgment was entered in favor of the plaintiff. On appeal the Supreme Court of Illinois, after pointing out that there was no evidence to show how the car of lumber was originally loaded or how long the scantling had been protruding prior to the accident, stated, 212 Ill. at page 508, 72 N.E. at page 454:

"The judgment in this case is sought to be sustained on the theory that the maxim *res ipsa loquitur* applies, and unless this contention is allowed to prevail the judgment will have to be reversed, for, unless the accident or injury sustained by the plaintiff bespeaks the defendant's wrong, there is no proof of culpable negligence."

The court then held that the doctrine of *res ipsa loquitur* was not applicable, and the judgment was accordingly reversed.

We need not consider whether the plaintiff here could properly invoke the doctrine of *res ipsa loquitur*. He has not only introduced expert testimony tending to show the precise cause of the injury, which precludes the application of that doctrine, see Omaha Packing Co. v. Pittsburgh F. W. & C. Ry. Co., 7 Cir., 120 F.2d 594, but he has also expressly declined to rely on that doctrine. Therefore, it is not sufficient, to make a prima facie case, for the plaintiff merely to show that he was struck by a bleeder rod extending laterally from one of the defendant's cars. It was incumbent upon the plaintiff to introduce further evidence from which the jury might reasonably have inferred that responsibility for this condition lay in the defendant's negligence.

We have assumed that from the testimony of O'Hara and from other evidence the jury could infer that the plaintiff was struck by a bleeder rod

which had become disconnected by reason of a defective cotter pin. The jury could also infer that a specific inspection of the cotter pin is necessary to ascertain its condition. Finally, it could infer that the pin normally will last for about a year. But we are at a loss to see how, from these premises, the jury in this case could properly conclude that the defendant was guilty of actionable negligence. The plaintiff introduced no evidence whatever relating to the care exercised by the defendant to keep the machinery in good order. There is not the slightest indication of the frequency with which routine inspections were made, or of how long before the mishap this equipment was last inspected. (We note that O'Hara, who stated that inspections of air brakes "are made at least once a year," necessarily spoke from his experience as an employee of the Chicago Great Western railroad which, so far as the record shows, has no connection whatever with the defendant in this case.) Nothing in short, appears from which it might be inferred that the defendant knew or reasonably should have known that the cotter pin was defective. Under the circumstances, evidence relating to these matters was indispensable to entitle the plaintiff to submission of the question of negligence to the jury.

The plaintiff makes the further contention that the projecting bleeder rod was plainly visible, and that, therefore, it should have been observed by members of the defendant's crew. The plaintiff said he first saw the rod "sticking out" when the car from which it was projecting was six or seven car lengths south of the place where he was struck; that he "saw it as soon as he got hit." However, there is no indication as to how long the offending rod had been in that position. Neither is there any showing that members of the crew were so situated that they should have seen it irrespective of how long the condition had existed. No one would seriously contend that they were under an absolute duty to observe instantly every irregularity in the equipment regardless of its nature. To say that the train men should have seen the projecting rod and have avoided the accident, for no other reason than that the plaintiff saw it afterwards, is not a sufficient basis to support a reasonable inference of negligence.

We believe that the opinion of the Supreme Court of Illinois in Chicago & E. I. R. Co. v. Reilly, referred to previously, illustrates the controlling principle in this case. Here, as in that case, the plaintiff has failed to bring forth evidence beyond the occurrence of the injury itself which would warrant an inference of negligence on the part of the defendant. Our conclusion is not inconsistent with the opinion of this court in Chicago, M. & St. P. Ry. Co. v. Newman, 7 Cir., 11 F.2d 277, upon which the plaintiff relies.

The sole question of fact discussed by the court in the Newman case was as to whether the plaintiff was struck by an iron brake rod hanger and, if so, whether the hanger came from the engine of one of the defendant's fast passenger trains which was passing at the time of the accident. The court there stated that:

> "His [the plaintiff's] theory that the hanger came from the engine of the passing train has some support in the evidence, *aside from that arising by virtue of the accident.*" (Our emphasis.)

This statement would indicate that the court was, at least to some extent, depending on the doctrine of *res ipsa loquitur*. After a very meager statement as to the evidence, this court said:

> "It would serve no useful purpose to discuss the evidence at length. It is sufficient to say that we are of the opinion that there remained at the close of the testimony a jury question as to whether the hanger which caused the injury came from the passing engine, and *whether its detachment evidenced a want of ordinary care*

*on defendant's part."* (Our emphasis.)

Here again we see reliance on the doctrine of *res ipsa loquitur,* a doctrine upon which the plaintiff here has declined to rely. Therefore, that decision cannot serve as a guide in the instant case.

The plaintiff has asserted that the opinion of the Supreme Court in Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, compels a holding that here the jury could properly find negligence on the part of the defendant. We do not think that opinion, although it defines and illustrates the jury's function to draw inferences from the record facts, is apposite here. The principal question in that case, which arose under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., was as to the cause of a fatal blow on the head suffered by the plaintiff's intestate. The court held only that there was a sufficient evidentiary basis in the record to support a jury inference that the deceased was struck by the tip of a dangling mail hook, which was so fastened to the side of the car that when the car was going around a curve the point of the hook swung out from the rail three or three and a half feet. As to the other defendant railroad company the court held that at the point where the defendant was injured the ground was high and uneven and the place was dark, which conditions could properly be found to have been contributing causes of the accident. So far as that opinion discloses, negligence, of the one railroad in allowing the hook to swing free and of the other railroad in furnishing an unsafe place to work, was assumed by all parties. In the instant case we have accepted the plaintiff's theory of causation, the only question actually considered by the Supreme Court in the Lavender case. And we have emphasized that the plaintiff here was required to show, beyond the fact that he was struck by a projecting bleeder rod, matters from which the railroad's lack of due care might properly be inferred. This he has not done.

In view of our holdings as expressed above we find it unnecessary to discuss the other questions raised by the parties.

The judgment of the District Court is reversed, and the cause is remanded with instructions to enter judgment for the defendant.