St. Louis Southwestern Railway Co. *v.* Earl B Clemons, etc.

5-4185                                   415 S. W. 2d 332

Opinion delivered May 29, 1967

*Coleman, Gantt, Ramsay & Cox*, for appellant.

*Wynne & Wynne* and *W. C. Medley*, for appellee.

LYLE BROWN, Justice. This is an appeal by St. Louis Southwestern Railway Company from a jury verdict of $15,000 awarded Earl B. Clemons, as father and next friend of his fourteen-year-old son, Marion Lee Clemons. The boy is alleged to have received serious injuries from being struck by a metal strip protruding from a freight train. The railroad company contends the boy was a trespasser; that willful and wanton negligence, being the only predicate for liability, was not established as a matter of law; and that it was entitled to a directed verdict.

Marion Lee Clemons, sixteen years old at the time of trial, was the only eye witness presented by plaintiff. His testimony as to the occurrence is briefly summarized. He was returning from hog hunting around 11:00 a.m. and was walking on the rails and ties. When the train came into sight he stepped over to the side and kept walking. He happened to look up and saw what appeared to be a metal strip several feet in length. It was like metal strippings used to tie down logs and

boxes on flat cars. The strip was flapping, would hit the side of the car, bounce outward, and hit the side of the car again. He ran to a ditch some fourteen to eighteen feet from the track. The ditch was more than three feet below the level of the tracks. Notwithstanding this precaution the long, swinging strip struck him.

Neither *res ipsa loquitur,* lookout, nor discovered peril is an issue here. Marion Lee Clemons was a trespasser. The liability of the railroad was submitted to the jury on the theory of willful and wanton disregard.

Our court is committed to the majority rule that willful and wanton misconduct is, as a matter of law, higher in degree than gross negligence. *Froman* v. *J. R. Kelly Stave & Heading Co.,* 196 Ark. 808, 120 S. W. 2d 164 (1938). There it was said that "willful negligence involves the elemnt of conduct equivalent to a so-called constructive intent."

When the evidence in a given case gives rise to an inference of willfulness or wantonness, then the latter becomes a jury question. But such an inference must be reasonably inferrible before the trial court is authorized to submit the issue to the jury. See *Steward, Administrator* v. *Thomas,* 222 Ark. 849, 262 S. W. 2d 901 (1953).

The most strained interpretation of the evidence in this case on negligence would not raise the degree of negligence to willful and wanton disregard. The strongest inference that can be drawn is that the train had proceeded for an unknown distance with a long metal strip flapping from a freight car. The boy testified that since the accident he had seen similar loose strips. Appellee argues that since the engineer, fireman, or conductor did not inspect the train at the last terminal (Texarkana), the inference is left that a proper inspection was not made. The conductor testified on cross-examination that the inspection of the train was the responsibility of the car inspectors. Appellee's attorney

inquired if the conductor knew whether that inspection was made and the answer was a categorical "Yes." The train made no stops between Texarkana and the place of the mishap near Thornton.

In a situation where neither *res ipsa loquitur*, failure to keep a lookout, nor discovered peril is relied upon, we must have some evidence that the railroad's employees knew, or should have known, of a condition that would naturally or probably result in injury to a trespasser but proceeded in utter disregard of the danger. No such evidence is in the record. If a long metal strip were flapping from the train, we are left to speculate whether the break occurred fifty feet, or fifty miles, prior to striking the boy. As to the knowledge of the train crew, that time element would be most significant. It is a matter of common knowledge that within the right-of-way are located such objects as maintenance sheds, switch stands, signposts, whistle boards, signal light poles, and other structures upon which a long, flapping metal strip would most likely leave its mark. Yet we are not afforded any evidence in that respect.

The facts in *Kuchin* v. *Chicago & N. W. R. Co.*, 210 F. 2d 863 (1954), are analogous to the events in this case. Kuchin was walking along a cinder footpath used for a number of years by the general public. (Kuchin only had to establish culpable negligence in order to recover.) As the train approached Kuchin from the rear, he stepped a few feet out of the path and away from the train. He kept walking. He was struck in the back by an object protruding from the train. As the train, moving slowly, proceeded on, Kuchin saw a rod "sticking out" from one of the cars. In reversing a jury verdict the court said:

> "The plaintiff makes the further contention that the projecting bleeder rod was plainly visible, and that, therefore, it should have been observed by members of the defendant's crew. The plaintiff said he first saw the rod 'sticking out' when the car from

which it was projecting was six or seven car lengths south of the place where he was struck; that he 'saw it as soon as he got hit.' However, there is no indication as to how long the offending rod had been in that position. Neither is there any showing that members of the crew were so situated that they should have seen it irrespective of how long the condition had existed. No one would seriously contend that they were under an absolute duty to observe instantly every irregularity in the equipment regardless of its nature. To say that the train men should have seen the projecting rod and have avoided the accident, for no other reason than that the plaintiff saw it afterwards, is not a sufficient basis to support a reasonable inference of negligence."

Certiorari was denied. *Kuchin* v. *Chicago* ɴ *N. W. R. Co.*, 348 U. S. 840 (1954). We cite the Kuchin case only to show that in a very similar fact situation, an appellate court held the facts insufficient to establish a lesser degree of negligence than willful and wanton disregard.

Appellee argues that a jury question was made as to "some degree of negligence." This statement is based on the assertion that the railroad "failed to inspect its equipment and its cars and had a metal strip protruding 16 feet from a car while the train was traveling 63 miles per hour." (The only concrete testimony regarding inspection was that elicited from the conductor by counsel for appellee. He testified that to his knowledge the car inspectors at Texarkana inspected the train.)

Starting with the assumption that some degree of negligence was established, appellee reasons that the exact degree is solely a matter for the jury. He relies strongly on the case of *Harkrider* v. *Cox*, 230 Ark. 155, 321 S. W. 2d 226 (1959). In this connection *Harkrider* holds that the distinction between *gross negligence* and *willful and wanton misconduct* is very narrow; because of the fine line of distinction, many cases arise where, under the facts in those cases, "the question is one for

the jury whether the negligence had become willful and wanton.'' Mr. Harkrider ''deliberately and intentionally drove on the wrong side of the road at a speed of 66 feet per second under conditions which made it impossible for him to see more than 100 feet in front of him.'' As a result, Harkrider's guest was injured. *Harkrider* is not authority for appellee's contention that if *some* degree of negligence is shown the jury is permitted to raise it to willful and wanton disregard.

Appellee cites two cases in which this court approved verdicts for the plaintiffs being struck by objects falling or protruding from a train: *St. Louis & S. F. Rd. Co.* v. *Carr,* 94 Ark. 246, 126 S. W. 850 (1910), where a door or other object protruding from a train struck plaintiff; *St. Louis I. M. & S. Ry.* v. *Neely,* 63 Ark. 636, 40 S. W. 130 (1897), where a door fell from a freight train and injured plaintiff. Carr and Neely were not trespassers. Willful and wanton disregard was not an issue.

We come now to the question of whether this case should be dismissed or remanded. This court has long adhered to the rule so well reiterated in *Fidelity Mutual Life Insurance Co.* v. *Beck,* 84 Ark. 57, 104 S. W. 533 and 1102 (1907). The general rule is to remand common law cases for new trial. Only exceptional reasons justify a dismissal. One of the exceptions is an affirmative showing that there can be no recovery. *Pennington* v. *Underwood,* 56 Ark. 53, 19 S. W. 108 (1892). There it was said that when a trial record discloses ''a simple failure of proof, justice would demand that we remand the cause and allow plaintiff an opportunity to supply the defect.'' To the same effect, see *Hinton* v. *Bryant,* 232 Ark. 688, 339 S. W. 2d 621 (1960).

The reversal at hand is based on failure of proof. It is not impossible that the defects in proof could be supplied on retrial. Our comment on the evidence surrounding the breaking of the strap and the lack of proof by appellee regarding inspection of the train justifies

that statement. In view of possible retrial we do not, in all fairness, point out other avenues which might be worthy of development.

Appellant contends the court erred in giving two instructions on negligence. Instruction No. 7 defined negligence (AMI 301). Instruction No. 8 explained the terms "ordinary care" and "negligence" with respect to a minor (patterned after AMI 304). It was redundant to give both. Ordinary negligence was charged only against the boy and No. 8 would have sufficed. The railroad was charged with willful and wanton disregard and that was covered in another instruction.

Reversed and remanded.

WARD and BYRD, JJ., dissent.

FOGLEMAN, J., would reverse and dismiss.

PAUL WARD, Justice, dissenting. For reasons set out below, I do not agree with the majority opinion.

(a)  Marion Lee Clemons testified he was injured by a long metal strip attached to appellant's car. There is no direct testimony to the contrary.

(b)  The undisputed testimony is that such strips are used in the regular course of appellant's business, and that they sometimes hang loose.

(c)  There is no direct testimony that this particular car was inspected on this occasion and found in a safe condition.

(d)  It cannot with reason be argued that such loose hanging strips would not constitute a serious hazard to a person on the right-of-way.

(e)  It is not contended that this hazard was the result of the condition of appellant's premises, *i. e.* the right-of-way.

(f)   It is only reasonable to assume that people do frequently walk on a railroad right-of-way, and that appellant is aware of this fact.

In view of the above factual situation, which is a matter for the jury only to consider, it is my conclusion that the case should be affirmed if the jury was justified in finding appellant was guilty of ordinary (not wanton and willful) negligence. This is in accord with our recent holding in the case of *George Lee Tatum* v. *Rester*, 241 Ark. 1059, 412 S. W. 2d 293.

BYRD, J., joins in this dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I dissent only  as to the remand of this case.

I agree with the academic statements of the majority with reference to remand of a law case for a new trial. The great difficulty is that none of them are applicable here. The statement from *Pennington* v. *Underwood,* 56 Ark. 53, 19 S. W. 108, is dictum. The court entered judgment for the defendant here instead of remanding.

I have found two cases where this court, under what were declared to be unusual circumstances, remanded a case for a new trial upon a reversal for failure of the trial court to direct a verdict. *Reynolds Metals Company* v. *Ball,* 217 Ark. 579, 232 S. W. 2d 441; *Hayes Brothers Flooring Co.* v. *Carter, Adm'x,* 240 Ark. 522, 401 S. W. 2d 6. On the other hand, there are numerous cases which were dismissed upon such a holding here. Some of them are: *Arkansas Cotton Oil Co.* v. *Carr,* 89 Ark. 50, 115 S. W. 925; *Arkansas Natural Gas Co.* v. *Gallagher,* 111 Ark. 247, 163 S. W. 791; *American National Ins. Co.* v. *Hamilton,* 192 Ark. 765, 94 S. W. 2d 710; *Temple Cotton Oil Co.* v. *Brown,* 198 Ark. 1076, 132 S. W. 2d 791; *Southwestern Bell Tel. Co.* v. *Casson,* 199 Ark. 1140, 138 S. W. 2d 406; *Kroger Grocery & Baking Co.* v. *Kennedy,* 199 Ark. 914, 136 S. W. 2d 470; *Missouri Pac. R.*

*Co.* v. *Moore*, 199. Ark. 1035, 138 S. W. 2d 384; *Pacific National Fire Ins. Co.* v. *Suit*, 201 Ark. 767, 147 S. W. 2d 346; *Tucker Duck & Rubber Co.* v. *Harvey*, 202 Ark. 1033, 154 S. W. 2d 828; *Twin City Pipe Line Co.* v. *Butler*, 203 Ark. 240, 156 S. W. 2d 222; *Brotherhood of Railroad Trainmen* v. *Drake*, 204 Ark. 964, 165 S. W. 2d 947; *Woodard* v. *Holliday*, 235 Ark. 744, 361 S. W. 2d 744; *Twin City Amusement Co., Inc.* v. *Salater*, 237 Ark. 206, 372 S. W. 2d 224.

It is true that in each one of the latter cases the court made the usual comment about the case having been fully developed, but I think the statement would be just as appropriate here. Be that as it may, I feel that this is an action which brings about an unfair situation. If the trial judge had directed a verdict, as we say he should, we would have affirmed and there would have been no chance for appellee to have a second attempt at his proof. Thus we have put a premium for plaintiffs on the erroneous failure of a trial judge to direct a verdict. This produces, in my opinion, a wholly undesirable and indefensible result and one that will haunt trial judges and this court from henceforth.