FORD MOTOR CO. ET AL v. LANELL G. TRITT, ADM'X

5-4486                                         430 S. W. 2d 778

Opinion delivered May 13, 1968
[Rehearing granted September 3, 1968]

884

*Wright, Lindsey & Jennings* and *Shaw, Jones & Shaw*, for appellants.

*Sam Sexton Jr.* and *H. Clay Robinson*, for appellee.

CONLEY BYRD, Justice. This personal injury action arising out of the death of Chester L. Tritt was brought by appellee, Lanell G. Tritt, Administratrix, for the benefit of herself as wife and next of kin, against appellant, Burnham-Ray Company, Inc., the local Ford dealer, for breach of an implied warranty of fitness of a 1963 Ford pickup truck. Burnham-Ray filed a third party action against appellant, Ford Motor Company. From a $40,000 judgment in favor of the administratrix against Burnham-Ray Company, and a judgment against Ford Motor Company in favor of Burnham-Ray Company, both Ford and Burnham-Ray appeal, contending (1) that there was no substantial evidence that a manufacturing defect was a proximate cause of the accident; (2) that the provisions in the "Dealer Warranty" precluded a suit for personal injuries; (3) that there was a waiver or estoppel as to breach of a warranty other than the express warranty; (4) that the accident resulted from subsequent acts and omissions and intervening causes; and (5) that the contract between Burnham-Ray and Ford precluded the judgment against Ford.

The allegation with reference to the defect was:

"There is an implied warranty of fitness extending from the defendant to the deceased. This warranty

was breached because the vehicle sold to the deceased had a defective axle and/or right rear wheel which resulted in the collapse of the wheel and proximately caused the death of Mr. Tritt."

Decedent purchased the truck in December 1962. From the beginning, he had a problem with vibration. Burnham-Ray made numerous warranty repairs to the truck, including replacement of the rear axle housing and a new drive shaft. At the time of the fatal accident in March of 1964 at 11:00 p.m., the vehicle had 16,000 miles on it.

Harold Sorey was following some fifty to seventy feet behind the pickup at the time of the accident. The pickup was zigzagging or fishtailing back and forth after it rounded an "S" curve. It then ran off the pavement with the two left wheels, came back on the pavement, ran off the pavement with the right two wheels, came back on the pavement, turned sideways and turned over. Sorey said he saw the right rear wheel break down before the truck turned over.

Dr. Paul Cushman, retired professor of mechanical engineering of the University of Oklahoma and chief engineer of the L & S Roller Bearing Company, testified that he was consulted about a wheel that had been destroyed in the accident. After studying the wheel and learning something about the history of the truck he was asked:

"Q.   Now, Dr. Cushman, what was there about the wheel that caused you to want to examine the axle?

A.   Well, I knew something about the history of the truck besides what I had seen examining the wheel.

Q.   But outside the history of the truck, just the physical evidence of the wheel itself?

A. I will point to several of these rivet holes of having apparently broken down one or two at a time, and the three on this side not being displaced and two of them being practically not displaced at all. Well, because of that I thought that there was evidence of vibration, that vibration had taken place there and gradually—

MR. LINDSEY: We object to that on the grounds that he is giving a conclusion without any basis or foundation for it.

WITNESS: You have to estimate some of these things.

MR. LINDSEY: But he is taking into consideration what he has been told about the vehicle, and we object.

THE COURT: Now his testimony should be confined to what he learned from the pieces themselves.

MR. ROBINSON:

Q. Now, that is what I am asking you, Dr. Cushman, if from the examinations of the wheel itself, did you draw these conclusions?

A. From that alone, I couldn't, but I would say that there were suspicions that there was vibration."

Dr. Cushman stated definitely that the right rear axle was defectively manufactured and that the defect would cause a vibration that would be transmitted to the wheel. Due to objections by appellant's counsel, Dr. Cushman was prevented from testifying as to what effect the defective axle and vibration would have on the wheel. The proffer of proof was that:

"If permitted by the Court to do so, Dr. Cushman would have further testified that the wobble caused by this defective axle could have caused and would have caused the eventual breakdown of the wheel, that it would have caused the rivets to fail and they would have failed progressively and the wheel would have broken down."

The wheel introduced into evidence consisted of a rim and a spider. The spider (the part of the wheel that is bolted to the hub of the truck) was attached to the rim at four points by the use of three rivets at each point. As introduced the spider was broken loose from the rim at three of the four points. Opposite the point remaining intact, the outside of the rim was crimped or bent toward the inside of the vehicle as if it had received a horizontal impact in that direction.

Thus it is seen that from the record there is no direct evidence of any manufacturing defect in the wheel, nor is there evidence to show that the defective axle was the proximate cause or could have been the proximate cause of the wheel's collapse.

It is well settled in the law that before a party can be held liable in damages for a wrong, the person claiming the damages must show that the wrong was the proximate cause of the damages suffered. *Garner* v. *Missouri Pac. Railroad Co., Thompson, Trustee*, 210 Ark. 214, 195 S. W. 2d 39 (1946).

Appellee argues, however, that if a wheel that is not defective will not collapse when the vehicle is being driven under normal conditions, a fortiori, a wheel that does collapse must be, in some respect, defective. This is, in effect, an attempt to apply the res ipsa loquitur doctrine. That doctrine is not applicable. *Ford Motor Co.* v. *Fish*, 232 Ark. 270, 335 S. W. 2d 713 (1960). This is a much different situation than that involved in *Vandermark* v. *Ford Motor Co.*, 37 Cal. Rptr. 896, 391 P. 2d

168 (1964), upon which appellee relies, for there the alleged defective brake mechanism was destroyed in the accident. Furthermore, Judge Traynor there pointed out facts showing that the brake mechanism at the time of the injury was in the same condition as when it left the factory. Here we have a wheel used from December of 1962 to March of 1964 with some 16,000 miles of use, and the record is devoid of any proof relative to the use of the vehicle which might affect the condition of the wheel. Under such circumstances, it is almost imperative that expert testimony be used to show that a defect in the wheel was a manufacturing defect.

Therefore, we hold that there was insufficient evidence to show any manufacturing defect in the wheel or that the defect in the axle was a proximate cause of the collapse of the wheel. This of course calls for a reversal of this case; but since the reversal is for a lack of proof of causation, a matter which may be supplied by expert testimony, we are remanding same for a new trial. *Continental Geophysical Co.* v. *Adair*, 243 Ark. 589, 420 S. W. 2d 836 (1967).

In view of the possibility of a new trial, we point out that the issues with respect to waiver or estoppel as to any breach of warranty are, under the facts in this case, issues that were properly submitted to the jury. It is certainly not a question of law on review, for one seldom waives or is estopped with respect to a defect of which he had no knowledge. Furthermore, we think that whether the accident resulted from subsequent actions and omissions and intervening causes was also a fact question.

The issues between Ford Motor Company and Burnham-Ray Company have to do with the warranty which provides:

"Ford Motor Company has warranted to the Dealer who, pursuant to his sales agreement with the Com-

pany, hereby, on his own behalf, warrants to the owner each part of this Ford vehicle to be free under normal use and service from defects in material and workmanship for a period of 24 months from the date of delivery to the original retail purchaser or until it has been driven 24,000 miles, whichever comes first. This warranty shall be fulfilled by the Dealer ,(or if the owner of the vehicle is traveling or has become a resident of a different locality by any authorized Ford dealer) replacing or repairing at his place of business, free of charge including related labor, any such defective part.

\* \* \*·

"This warranty is expressly in lieu of any other express or implied warranty, including any implied warranty of merchantability or fitness, and of any other obligation on the part of the Dealer."

The waiver of the implied warranty of merchantability or fitness certainly does not protect Burnham-Ray from liability, for to do so would be unconscionable under the Uniform Commercial Code within the meaning of Ark. Stat. Ann. § 85-2-719 (3) (Add. 1961), which provides:

"(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

As between Ford and ,Burnham-Ray, however, Ford takes the position that the phrase "consumer goods," as used in the above statute, must take the definition given to consumer goods in the U. C. C., Ark. Stat. Ann. § 85-9-109(1), (4) (Add. 1961), which provides:

"Goods are

(1) "consumer goods" if they are used or bought

for use primarily for personal, family or household purposes;

\* \* \*

(4) "inventory" if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment."

Since § 85-9-109(1) also contains a definition for inventory, Ford argues that as between it and the dealer the automobile was inventory with the dealer and that the unconscionable clause does not apply. We do not agree, for as we read § 85-2-719(3), the first sentence— i. e., "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable" —is not limited by the second sentence to consumers.

The composition and assembly of the modern automobile is such that as between a manufacturer and a dealer there is relatively little difference between the position of the dealer to the manufacturer as to consequential damages for latent defects and the position of the ordinary purchaser to the dealer. As to whether a waiver of the implied warranty of merchantability or fitness is unconscionable, a fact question is presented where it is shown that the defect is latent and such that the automobile dealer is not charged with notice or knowledge of the defect and with notice or knowledge that it could result in consequential injuries or damages. Nothing could be more unconscionable than to hold the dealer, a mere conduit between the manufacturer and the ultimate consumer, liable for consequential damages on breach of an implied warranty for a fault or defect caused by the automobile manufacturer of which the dealer had no notice or knowledge. The defect, as shown by the record here, was obviously one which a reasonable inspection would not have disclosed, and under the cir-

cumstances we hold that the unconscionability of the exclusion of the implied warranty between the dealer and Ford was a fact issue.

Reversed and remanded.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the remand of this case because I consider that the offer of proof by the witness Cushman to have been improperly excluded and that it would have made a jury question. I take the position that if Cushman had testified in the exact words of the offer of proof, reasonable minds might well have drawn an inference that the rivets, or some of them, failed gradually rather than serially, until one or more became so weak that the wheel broke down suddenly.