Randy WIRTH and Mary Wirth *v.* REYNOLDS METALS COMPANY

CA 96-1161 947 S.W.2d 401

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered June 25, 1997

*Walters, Hamby & Verkamp*, by: *Michael Hamby*, for appellants.

*Warner, Smith & Harris, PLC*, by: *Douglas O. Smith, Jr.*, and *Gerald L. DeLung*, for appellee Reynolds Metals Company.

JUDITH ROGERS, Judge. This is an appeal from an order of summary judgment entered upon a finding that appellants, Randy and Mary Wirth, had failed to offer proof of proximate causation to support their claim of negligence[1] against appellee, Reynolds Metal Company. Although appellants contend that the trial court erred in its decision, we affirm.

In May of 1994, appellants drilled a water well to service a new home they were in the process of building in rural Sebastian County. Appellants and their four children moved into the home on December 31, 1994. The family consumed an average of 12,000 gallons of water a month, and the well produced eight gallons of water a minute, which was sufficient to meet their needs. After using the well for four months, appellants experienced problems with the well in terms of pressure and the quantity of

---

[1] We certified this case to the supreme court as one presenting a question in the law of torts. Ark. Sup. Ct R. 1-2(a)(15). However, the court returned the case to us for decision.

water it produced. In July of 1995, production of the well decreased to half a gallon a minute. In October, appellants abandoned use of the well and drilled another well one hundred feet away.

Appellants filed this suit against appellee for damages connected with the failure of the first well. In their complaint, they alleged that appellee had drilled a gas well on adjacent property at a distance of 800 feet from their water well. They claimed that the damage caused to the water well was the proximate result of appellee's drilling and operation of the gas well. Appellants prayed for damages in the amount of $10,000. Appellants subsequently amended their complaint to assert a claim of negligence against appellee. Specifically, in terms of proximate causation, appellants alleged that "the slurry or cement used by the [appellee] in casing their [sic] well leaked into the natural aquifer which served as a channel through which [appellants'] water supply flowed."

Appellee moved for summary judgment on the issue of proximate causation. Submitted with the motion were the depositions of appellant, Randy Wirth, and T.H. Musgrove, appellants' expert who had drilled appellants' water wells, as well as the affidavit of Darwin Hale, the tool pusher who worked on the crew that drilled appellee's gas well. In opposition to the motion, appellants relied on the same depositions and added the affidavit of a neighbor, Omar Gibson.

In his deposition, Wirth asserted that the problems with his well began two weeks after appellee drilled its well. He said that he did not have any information and did not know that there was anything inappropriate done in the drilling of the gas well, but that it was his "personal belief that this casing and cementing is what caused my problem."

Mr. Musgrove related that there was no continuous aquifer in the area and that he had dug appellants' well in a fault where water tends to collect. He had not examined the gas well or appellee's log books, and he did not know the distance between the two wells or the differences in elevation. He could not say that appel-

lee's gas well had any effect on appellants' water well. He said that the only scenario for appellee's well to have caused the problem would be if cement had been lost during the drilling of the gas well. He stated that "[i]f they lost cement, it could possibly have bothered the well." He said, however, that he had not checked to see if any cement had been lost, but he opined that the man who cemented the gas well would know.

Darwin Hale stated in his affidavit that no water had been encountered during the drilling of appellee's well and that no cement had been lost. As based on his experience and knowledge, he averred that the drilling of the gas well did not and could not have had any effect on the water well.

In his affidavit, Mr. Gibson stated that he had lived in "close proximity" to appellants' property for three years. He said that his well had run dry from time to time and that its production had decreased substantially since the drilling of appellee's gas well.

On this record, the trial court granted appellee's motion for summary judgment. The court took note of Mr. Musgrove's testimony that the drilling of the gas well would not have caused the decreased water capacity of appellants' well in the absence of a loss of cement during drilling, and the testimony of Mr. Hale who stated that no cement had been lost. The court thus found that appellants had failed to offer proof in support of their claim of a causal relationship between the drilling of the gas well and the damage to their water well.

In this appeal, appellants have discarded the theory of causation with respect to the loss of cement. It is their argument that summary judgment was not appropriate because of the circumstantial evidence contained in the record, which consists of proof indicating that their well and Mr. Gibson's well developed problems two weeks after the drilling of appellee's gas well. Applying the familiar principles of summary judgment to the evidence adduced in this case, we find no merit in this argument.

■■ Summary judgment should be granted only when a review of the pleadings, depositions, and other filings reveals that

there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Johnson v. Harrywell, Inc.*, 47 Ark. App. 61, 885 S.W.2d 25 (1994). All proof submitted must be considered in the light most favorable to the nonmoving party, and any doubts or inferences must be resolved against the moving party. *Wozniak v. Colonial Ins. Co.*, 46 Ark. App. 331, 885 S.W.2d 902 (1994). Rule 56(e) of the Arkansas Rules of Civil Procedure provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The supreme court has interpreted Rule 56(e) many times and has summarized its requirements by stating that once the moving party makes a prima facie showing of entitlement, the opposing party must meet proof with proof by showing a genuine issue of material fact. *Dillard v. Resolution Trust Co.*, 308 Ark. 357, 824 S.W.2d 387 (1992). When a prima facie showing is made, the adverse party may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Norris v. Bakker*, 320 Ark. 629, 899 S.W.2d 70 (1995); *Carmichael v. Nationwide Life Ins. Co.*, 305 Ark. 549, 810 S.W.2d 39 (1991). An affidavit stating only conclusions is not sufficient to show the existence of a genuine issue of material fact. *Hampton v. Taylor*, 318 Ark. 771, 887 S.W.2d 535 (1994).

Here, the appellants alleged that the damage to their well was caused by the negligence of appellee attributable to the loss of cement when the gas well was drilled. Appellee refuted that allegation and thus made a prima facie showing of entitlement to summary judgment. *See Knowlton v. Ward*, 318 Ark. 867, 889 S.W.2d 721 (1994); *Hensley v. White River Medical Center*, 28 Ark. App. 27, 770 S.W.2d 190 (1989). It then fell to appellants to dis-

card the shielding cloak of formal allegations and meet proof with proof to show a genuine issue of material fact. *Cash v. Lim*, 322 Ark. 359, 908 S.W.2d 655 (1995); *Cummings, Inc. v. Check Inn*, 271 Ark. 596, 609 S.W.2d 66 (1980); *J.M. Products, Inc. v. Ark. Capital Corp.*, 51 Ark. App. 85, 910 S.W.2d 702 (1995). This they failed to do. Although there was proof that the well developed problems shortly after the drilling of the gas well, the wells were located at a distance of over two football fields apart, and appellants offered no specific evidence demonstrating how the drilling of the gas well might possibly have caused the damage to their well. Appellants' claim is thus based on mere allegations and conclusions, which are not sufficient to overcome appellee's prima facie showing of entitlement to judgment as a matter of law.

 To accept appellants' argument that the mere timing of these events established a causal connection, we would have to engage in reasoning based on a logical fallacy known as *post hoc ergo propter hoc*, meaning "after this and therefore because of this." *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 n. 8 (10th Cir. 1987). The failure of *post hoc ergo propter hoc* reasoning to prove proximate causation was ably set forth by the Supreme Court of Mississippi in *Western Geophys. Co. of America v. Martin*, 174 So. 2d 706 (Miss. 1965). Like the instant case, *Martin* involved a damaged water well. Martin, the well owner, asserted that Western's negligent conduct damaged his well. The issue on appeal was whether the trial court erred in denying Western's motion for a directed verdict. The court described Western's conduct and its relation in time and place to Mr. Martin's water well as follows:

> The Western Geophysical Company of America, hereinafter called Western, is engaged in seismograph work, the main purpose of which is to locate subsurface formations capable of producing oil. This work involved the detonating of small charges of dynamite in relatively shallow holes, thereby sending out energy waves which in turn bounced off the lower formations and traveled back to the surface where they were detected and recorded by extremely sensitive instruments.

Appellee charged that on May 6, 1963, around three o'clock in the afternoon, the appellant detonated a charge of dynamite close to the appellee's property and a water well of the appellee, so that the appellee's water well, which had been operating properly, ceased to do so and began to pump sand, which ruined the pump. More specifically, the appellee charged Western's wrongful act was "the firing of dynamite in the water stream that your plaintiff's water well was in and the firing of dynamite or other explosives too close to the plaintiff's house and water well." Appellee further charged that the vibration damaged the strainer, causing the pump to pump sand and rusty water, and that the sand burned up the pump. The appellee contended that the explosion was the proximate cause of the loss of his well and that he sustained actual and punitive damages in the sum of $2,500.

*Martin*, 174 So. 2d at 707-08.

The court then summarized a great deal of testimony offered by Western to the effect that its conduct in setting off the dynamite charge did not damage Mr. Martin's water well. Thereafter, the court noted:

In the case at bar, there is not any specific, competent testimony as to how and in what manner the well was damaged by the appellant's detonation. In fact, there is no testimony on this point except by the appellee [Martin] himself, who admitted that he did not know what damage was caused; that he just assumed damage was caused.

*Martin*, 174 So. 2d at 713.

In concluding that the trial court should have granted Western's motion for a directed verdict, the court relied on its previous decisions in *Humble Oil and Refining Co. v. Pittman*, 49 So. 2d 408 (Miss. 1950), and *Kramer Service, Inc. v. Wilkins*, 186 So. 625 (Miss. 1939), and observed:

The language of the court in the Pittman case deserves our attention. In that case it was said:

Against this expert testimony there is left only the circumstance that soon after the charges were fired some disturbance of the well appeared. This may of course have had a causal connection with the explosions. There is plausible ground for lay witnesses so to suspect. Yet verdicts may not rest upon suspicion or conjecture. In its last analysis the circumstantial evidence adduced to support the verdict is the theory post hoc ergo propter hoc. This basis has never of itself been held substantial enough upon which to erect proximate causation. (Citing Kramer Service Co. v. Wilkins, 184 Miss. 483, 186 So. 625, 627 (1939).)

The Pittman case relied upon the Wilkins case, in which the court, speaking through Justice Griffith, said:

There is one heresy in the judicial forum which appears to be Hydra-headed, and although cut off again and again, has the characteristic of an endless removal. That heresy is that proof that a past event possibly happened, or that a certain result was possibly caused by a past event, is sufficient in probative force to take the question to a jury. Such was never the law in this state, and we are in accord with almost all of the other common-law states. . . . "Post hoc ergo propter hoc" is not sound as evidence or argument. Nor is it sufficient for a plaintiff seeking recovery for alleged negligence by an employer towards an employee to show a possibility that the injury complained of was caused by negligence. Possibilities will not sustain a verdict. It must have a better foundation.

This terse and expressive language had no such limited application as that it governed only in employer and employee cases, but is to be paraphrased as follows: It is not enough that negligence of one person and injury to another coexisted, but the injury must have been caused by the negligence. Post hoc ergo propter hoc is not sound as evidence or argument. Nor is it sufficient for a plaintiff, seeking recovery for alleged negligence by another toward the plaintiff, to show a possibility that the injury complained of was caused by negligence. Possibilities will not sustain a verdict.

It must have a better foundation. (184 Miss. at 496, 497, 186 So. at 627.)

*Martin*, 174 So. 2d at 714-15.

We find the Mississippi Court's analysis in *Martin* and the precedents upon which *Martin* relies to be persuasive.

Proximate causation is an essential element for a cause of action in negligence. *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996). When a party cannot present proof on an essential element of his claim, the moving party is entitled to summary judgment as a matter of law. *Sanders v. Banks*, 309 Ark. 375, 830 S.W.2d 861 (1992). *See also Bushong v. Garman Co.*, 311 Ark. 228, 843 S.W.2d 807 (1992). Although proximate causation is usually a question of fact for a jury, where reasonable minds cannot differ a question of law is presented for determination by the court. *Cragar v. Jones*, 280 Ark. 549, 660 S.W.2d 168 (1983). Appellants presented no evidence upon which fair-minded people could have concluded without speculation that the drilling of the gas well had any effect on their water well. Proximate causation cannot be based on mere coincidence. Therefore, we cannot say that the trial court erred in granting appellee's motion for summary judgment. *See, e.g., Caplener v. Bluebonnet Milling Co.*, 322 Ark. 751, 911 S.W.2d 586 (1995) (summary judgment affirmed where plaintiff failed to offer proof that the defendant's feed caused the death of plaintiff's ostriches); *Continental Geophys. v. Adair*, 243 Ark. 589, 420 S.W.2d 836 (1967) (holding that motion for a directed verdict should have been granted when no evidence was presented to show that the defendant's seismographic detonations caused the damage to plaintiffs' water wells).

Affirmed.

PITTMAN, GRIFFEN, and MEADS, JJ., agree.

STROUD and CRABTREE, JJ., dissent.

JOHN F. STROUD, JR., Judge, dissenting. I respectfully dissent from the majority's opinion. In my view, the majority opinion erroneously concludes that proximate causation is not a

genuine issue of material fact in this case, and it fails to address the factors that should guide analysis of proximate causation in cases like this one.

Three Arkansas Supreme Court decisions should govern our review of the circuit court's determination that appellants failed to present any genuine issue as to whether the appellee's drilling of its gas well was the proximate cause of the reduction in the amount of water that their first well produced. When considered together, these three cases set forth the sort of circumstantial evidence that a court should consider when determining whether the drilling of an oil or gas well damaged a neighboring water well.

The first of these three cases is *Western Geophysical Co. v. Mason*, 240 Ark. 767, 402 S.W.2d 657 (1966). In *Mason*, the supreme court affirmed a jury's verdict that the Western Geophysical Company had damaged Mason's water well in the course of conducting seismographic exploration for oil by exploding dynamite in holes fifty to seventy-five feet deep near Mason's property. After Western Geophysical Company's detonation of the dynamite, the water in Mason's well "turned red and muddy, and was unfit for use, allegedly as the result of the shots." *Mason*, 240 Ark. at 768, 402 S.W.2d at 658. With regard to Mason's proof that Western Geophysical Company's conduct was the proximate cause of the damage to his water well, the supreme court set forth the following summary of the circumstantial evidence that proved proximate causation:

> Rather than attempting to set out in full all relevant testimony, we deem it sufficient to point out: appellees testified their well was damaged in 1961 by similar explosions; that they so informed appellant [Western Geophysical Company], and that they warned appellant the explosions were too close to their well. Likewise, there is undisputed evidence in the record that the well was damaged shortly after the explosions occurred, and no other explanation for the damage was shown or even suggested. We are not unmindful of the expert testimony presented by appellant to the effect that vibrations set in motion by the explosions could not have affected the well because of the small size of the shots

and the distance from the well. However, in our opinion, a jury question was presented by all the testimony.

*Mason*, 240 Ark. at 769-70, 402 S.W. 2d at 658. Nowhere in its recitation of the circumstantial evidence bearing on the proximate cause issue did the supreme court state the distance between Mason's water well and the Western Geophysical Company's subterranean dynamite explosions. Moreover, the supreme court did not state the time that passed between Western Geophysical Company's dynamite explosions and the appearance of mud and red coloration in the water in Mason's water well.

The second supreme court decision pertinent to our review of this case is *O'Brien v. Primm*, 243 Ark. 186, 419 S.W.2d 323 (1967). In that case, the Arkansas Supreme Court affirmed the circuit court's denial of appellant O'Brien's motion for directed verdict. Appellant O'Brien owned an oil well that was 2,326 feet deep and was located 550 feet from appellee Primm's water well, which was approximately 30 feet deep. With regard to O'Brien's conduct and its relation in time to damage to the water in Primm's water well, the supreme court noted:

> In April 1964, appellants did what is known as a sand fract job on the oil well, and within a week or so following this operation, a change was noted in the quality of the water in appellees' water well, and the quality of the water rapidly deteriorated until it soon became unfit for human consumption.

*O'Brien*, 243 Ark. at 188, 419 S.W. 2d at 324.[1] The supreme court noted further that O'Brien's sandfract operation consisted of pouring cement down the casing of the gas well's shaft, then pouring acid into the well shaft and forcing sand, blended with oil, down through the well shaft under 3,500 pounds of pressure per square inch. Moreover, the supreme court noted that, in per-

---

[1] "Sandfracting" is defined as "[a]n operation designed to loosen or break up tight [sedimentary rock] formations which contain oil or gas, thus causing such formations to have more permeability and greater production." Howard R. Williams and Charles J. Meyers, *Oil and Gas Terms* 880 (7th ed. 1987).

forming this sandfract operation, appellant O'Brien made use of an old airplane engine, without a muffler, that generated vibrations of great intensity. The supreme court summarized appellee Primm's proof that appellant O'Brien's sandfracting job on his oil well was the proximate cause of damage to his water well as follows:

> Appellants' oil well, only 550 feet from appellees' water well, contained an undetermined amount of acid. It was the only known source of acid anywhere near the appellees' well. This acid was forced out into the earth under tremendous pressure along with, or ahead of, an undetermined amount or volume of fracting material. There is evidence of tremendous vibrations in connection with this operation and some evidence that the ground under the appellees' house vibrated. So giving to the appellees' evidence its highest probative value, and taking into account all reasonable inferences that may be deduced from it, the jury could have reasonably concluded that the high acid content of the water in appellees' well, which had suddenly gone bad following the sand fract operation, was forced into appellees' well along with other impurities, from the only known and nearest source, appellants' oil well.

*O'Brien*, 243 Ark. at 195, 419 S.W. 2d at 328.

The third Arkansas Supreme Court decision that should be considered in our review is *Continental Geophysical Co. v. Adair*, 243 Ark. 589, 420 S.W.2d 836 (1967). In that case, the supreme court reversed the trial court's denial of Continental Geophysical Company's motion for directed verdict. *Adair*, like *Mason*, involved an appellant that conducted seismographic exploration for oil by detonating dynamite in holes that had been drilled into the earth. Adair and the other four appellees were homeowners who lived in the vicinity of Continental Geophysical Company's dynamite blasts. Each appellee had a water well on his property that had gone dry in the spring or summer of 1964. With regard to the precise nature of Continental Geophysical Company's conduct and its spacial and temporal relation to the appellees' damaged water wells, the supreme court noted:

> The record facts show that sometime prior to March 13, 1964, appellant [Continental Geophysical Company] drilled ten holes in the vicinity of the Sugar Grove and Dry Creek areas of south Logan County, at a depth of 100 feet. . . . In each of seven of these holes appellant placed 200 pounds of dynamite, which took up 40 feet of the hole. The remaining 60 feet was filled with gravel. The charges packed in the holes were set off by appellant on March 13, 14, and 15, 1964. The closest test hole to any of appellees' wells was 1,600 feet; the farthest was 6,300 feet. It was also undisputed that in 1963 Logan County was declared a drouth area. . . .

*Adair*, 243 Ark. at 590, 420 S.W. 2d at 836. The supreme court also noted the testimony of Continental Geophysical Company's expert witness, who apparently was a geologist. This expert witness testified that all of the wells in the town of Sugar Grove drew water from an underground saturated mass and that this body of water did not flow in streams but moved as a body en masse. This expert witness testified further that there were no underground streams in the area. The supreme court held that the circuit court erred in denying Continental Geophysical Company's motion for directed verdict because there was no evidence that showed Continental Geophysical Company's dynamite blasts were "a cause which, in a natural and continuous sequence, produced the damages to the [appellees'] wells and without which the damages would not have occurred." *Adair*, 243 Ark. at 593. In reaching this conclusion, the supreme court specifically noted the distance from Continental Geophysical Company's dynamite blast holes and the appellees' water wells and the lag in time, from the middle of March 1964 to the spring or summer of 1964, as proof that Continental Geophysical Company's dynamite blasts did not cause the appellees' water wells to dry up.

Study of *Mason*, *O'Brien*, and *Adair* establishes that when considering whether seismographic exploration for or operation of an oil well was the proximate cause of damage to neighboring water wells, the Arkansas Supreme Court considers proof of the following factors, which can be circumstantial evidence of causa-

tion: (1) the nature of the oil well operator's activity; (2) the distance between the oil well and the water wells; (3) the proximity in time between the oil well operator's activities and the first appearance of damage to the water well; (4) the presence of (and nature of) contaminants in the water well; (5) the drought conditions in the locality; (6) the period of time that the water well had previously been in operation; (7) the difference between the rate of the water well's production before and after the oil well operator's conduct; (8) the manner in which subterranean water in the locality flows; and (9) the possibility that there is some other cause, other than the conduct of the oil well operator, for the damage to the water wells. Because this case was decided below in appellee's favor on a motion for summary judgment, this court should consider the proof bearing on these factors in the light most favorable to appellants, who were the nonmoving parties, and any doubts or inferences must be resolved against appellee. *See Cash v. Lim*, 322 Ark. 359, 361, 908 S.W.2d 655 (1995).

Application of the factors, noted above, to the circumstantial evidence set forth in the depositions and affidavits before the circuit court does not yield a conclusive result. The appellee did establish a prima facie case for summary judgment by introducing proof that the water that fed appellants' well flowed through strata of rock and that when its gas well was drilled the well shaft did not strike water. The appellee's prima facie case is buttressed by the confined nature of its activity — the drilling of a gas well — when compared to the blasting of the earth and intense vibration of the earth done by the defendants in *Mason*, *O'Brien*, and *Adair*. Neither party produced proof pertaining to the possibility of drought in the locality during the spring and summer of 1995. Neither party produced proof of any contaminants present in appellants' well water, prior to its purification, after the well's production dropped from eight gallons of water a minute to about half a gallon a minute.

Although appellee established a prima facie case to the entitlement of summary judgment in its favor, appellants placed before the circuit court proof that, if viewed in the light most favorable to

them, would establish a genuine issue as to whether appellee's conduct was the proximate cause of damage to their water well. Appellants proved that appellee's gas well was approximately 800 feet from their water well, which is comparable to the 550 feet between the water well and the sandfracted oil well in *O'Brien*. Moreover, appellant Randy Wirth introduced proof that approximately two weeks after March 26, 1995, he first noticed that there was low pressure in his water well and he also proved that the appellee began to drill its gas well in March of 1995. This approximate two-week period is comparable to the "week or so" in *O'Brien* that passed between the sand fract operation and the change in the water in Mr. Primm's well. In addition, Wirth proved that there was a significant reduction in the amount of water produced by his well after the appellee began drilling its gas well and this low production of water remained constant. Moreover, Wirth proved that in the six-month period prior to March 1995, when the appellee began to drill its gas well, his water well consistently produced enough water for his family's use. Moreover, appellee did not introduce proof that there was some other cause, other than its drilling of the gas well, for the damage to appellants' water well. This "no other explanation for the damage" factor was noted by the supreme court in *Mason* as a matter that presented an issue for the jury to determine. *Mason*, 240 Ark. at 770.

Based upon my analysis of the *Mason*, *O'Brien*, and *Adair* cases and based upon my review of all of the proof presented to the circuit court in the light most favorable to appellants, as the nonmoving parties, and because this court should resolve any doubts or inferences against appellee, as the moving party, I conclude that the circuit court erred in granting appellee's motion for summary judgment. When I apply the appropriate standard of review to the proof in this case, I conclude that appellants did present a genuine issue of fact regarding whether appellee's drilling of its gas well was the proximate cause of damage to their water well. I would reverse the granting of the summary judgment and remand this case for a trial on the merits.

CRABTREE, J., joins in this dissent.